IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Suanita McClurkin, | ) | |
| | ) | C.A. No. : 0:11-cv-02401-CMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | ON MOTION TO |
| Champion Laboratories, Inc., | ) | DISMISS |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on motion of Defendant Champion Laboratories, Inc. to dismiss Plaintiff Suanita McClurkin's Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Dkt. No. 4. Plaintiff's Complaint alleges three causes of action arising out of her termination from Defendant's York County facility: (1) breach of contract; (2) breach of contract accompanied by fraudulent act; and (3) breach of fiduciary duty. The court has jurisdiction under 28 U.S.C. § 1332(a)(1). For the reasons stated below, Defendant's motion is granted in part and denied in part.

**STANDARD**

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain the plaintiff cannot prove any set of facts in support of her claims that entitles her to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoted in *Giarratano*, 521 F.3d at 302). *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of his claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff *is* required to allege facts that support a claim for relief").

## DISCUSSION

Defendant argues that the case should be dismissed because Plaintiff's Complaint fails to state a cause of action. Specifically, Defendant argues that (1) Plaintiff's breach of contract claim is barred by S.C. Code Ann. § 41-1-110 ("§ 41-1-110"); (2) Plaintiff did not allege a fraudulent act to support a claim for breach of contract accompanied by fraudulent act; and (3) Defendant owed no fiduciary duty to Plaintiff because there was no fiduciary relationship between Defendant and Plaintiff. Dkt. No. 4-1.

In response to Defendant's motion to dismiss, Plaintiff argues that Defendant improperly attached a copy of the employee handbook and acknowledgment page,[1] thereby converting a motion to dismiss into a motion for summary judgment. Dkt. No. 7 at 6. Plaintiff further argues that the motion to dismiss should be denied because Defendant had an attendance policy contained in its employee handbook, which it "dishonestly" applied to Plaintiff. *Id.* at 7-8.[2] Plaintiff fails to specifically address any of Defendant's arguments.

The court first notes that Defendant did not convert its motion to dismiss into a motion for summary judgment by attaching a copy of the employee handbook and a copy of an acknowledgment form signed by Plaintiff. The Fourth Circuit has held that a court may consider a document referenced in, but not attached to, a complaint on a Rule 12(b)(6) motion if the document is integral to and explicitly relied upon in the complaint, and if the plaintiff does not challenge its authenticity. *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Plaintiff refers to the employee handbook in her Complaint, relies on the attendance policy contained in the employee handbook as the basis of her breach of contract claim, and does not challenge the authenticity of the employee handbook included with Defendant's motion to dismiss. Accordingly, the court may consider the employee handbook under Rule 12(b)(6). The acknowledgment page, which was not specifically referred to in the Complaint, is also attached to

---

[1] The acknowledgment page purports to be a copy of a document which Plaintiff signed acknowledging receipt of the employee handbook and that the employee handbook "is not to be construed as a contract." Dkt. No. 4-3.

[2] Plaintiff also argues that "a course of conduct has existed, at least since 2006, involving these attendance 'points.'" Dkt. No. 7 at 8. Plaintiff, however, fails to cite any legal authority or to expound on this course of conduct theory to support her breach of contract claim. The court need not address this theory because the court finds that Plaintiff's breach of contract claim survives dismissal based on the employee handbook.

3

Defendant's motion. The court, however, need not consider the acknowledgment page to reach its decision below.

**Breach of Contract.** Defendant argues that the employee handbook provided to Plaintiff in March 2006 does not create a contractual obligation because the handbook contained a conspicuous disclaimer as described in § 41-1-110, and that Plaintiff's breach of contract claim is, therefore, barred by § 41-1-110. Dkt. No. 4-1 at 6-7. Plaintiff does not respond specifically to Defendant's argument that Plaintiff's breach of contract claim is barred by § 41-1-110. On reply, Defendant reargues that the breach of contract claim is barred pursuant to § 41-1-110 because the handbook contained a conspicuous disclaimer.[3]

Under South Carolina law, employment relationships are generally at will. *Prescott v. Farmers Tel. Coop., Inc.*, 335 S.C. 330, 334, 516 S.E.2d 923, 925 (S.C. 1999). "[A]n at-will employee may be terminated at any time for any reason or no reason, with or without cause." *Stiles v. American Gen. Life Ins. Co.*, 335 S.C. 222, 224, 516 S.E.2d 449, 450 (S.C. 1999). "However, where the at-will status of the employee is altered by the terms of an employee handbook, an employer's discharge of an employee may give rise to a cause of action for wrongful discharge." *See Conner v. City of Forest Acres*, 348 S.C. 454, 463, 560 S.E.2d 606, 610 (S.C. 2002) (citing *Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452 (S.C. 1987)). To alter the at-will

---

[3] On reply, Defendant states that the court in *Cartee v. Wilbur Smith Assocs., Inc.*, "[a]fter determining the handbook contained a conspicuous disclaimer," dismissed a breach of contract claim pursuant to § 41-1-110. Dkt. No. 10 at 5 (citing *Cartee*, No. 3:08-4132, 2010 WL 1052091, at *3 (D.S.C. Feb. 2, 2010)). The court did *not* determine that the disclaimer was conspicuous. Rather the court explained that it "need not reach the issue of the adequacy of the disclaimer, however, as the handbook language upon which Cartee's Complaint relies is insufficient to contractually alter her at-will employment status." *Cartee*, 2010 WL 1052091, at *3. Defendant does not argue that the handbook language is insufficient to alter Plaintiff's at-will status, but only that the disclaimer bars the creation of a contract pursuant to § 41-1-110.

4

employment status, the handbook must contain contractually binding language that is "definitive in nature, promising specific treatment in specific situations." *Hessenthaler v. Tri-County Sister Help, Inc.*, 365 S.C. 101, 110, 616 S.E.2d 694, 698 (S.C. 2005). In determining whether a policy promises specific treatment in specific situations, "[t]he court should consider whether the promises are couched in permissive or mandatory language." *Lingard v. Carolina By-Products*, 361 S.C. 442, 447, 605 S.E.2d 545, 548 (S.C. Ct. App. 2004). Furthermore, "the handbook promise must restrict the right of an employer to discharge." *Lawrence v. Westinghouse Savannah River Co., Inc.*, 2005 WL 3968031 at *4 (D.S.C. March 31, 2005).

Employers who wish to issue handbooks without being bound by them "must insert a conspicuous disclaimer into the handbook."[4] *Hessenthaler*, 616 S.E.2d at 697. South Carolina Code § 41-1-110 provides that employee handbooks, personnel manuals, or other policies issued after June 30, 2004 will not create contractual obligations if the document contains a conspicuous disclaimer. In order to be conspicuous as a matter of law under this statute, the disclaimer in a handbook "must be in underlined capital letters on the first page of the document and signed by the employee." *Id.*

Defendant directs the court to a disclaimer on the first page of the employee handbook that was distributed to Plaintiff in 2006. The disclaimer is reproduced below:

> **EMPLOYMENT AT WILL**
> ***This booklet reflects Company policy at the time of publication.***
> ***The Company, of course, may change these policies and***
> ***reserves the right to do so at any time. Moreover, this booklet***

---

[4] Prior to the enactment of S.C. Code Ann. § 41-1-110, South Carolina courts recognized that mandatory policy statements contained in employee handbooks may be construed as contractual obligations despite a disclaimer in the handbook which asserts it is not intended to create a contract of employment. *See, e.g.*, *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606, 610-611 (S.C. 2002); *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E.2d 589, 594-96 (S.C. 1994); *Small v. Springs Indus., Inc.*, 292 S.C. 481, 357 S.E.2d 452 (S.C. 1987).

> ***is not to be considered all-inclusive or construed as a contract. Employment at will means that either you or the Company may terminate this relationship at any time, for any reason, with or without cause or notice.***

Dkt. No. 4-2 at 4. The disclaimer is underlined and located on the first page of the handbook as required by § 41-1-110. The court, however, finds that the disclaimer does not meet the statutory requirements of § 41-1-110 because the disclaimer is not in capital letters.[5] Although the title to the disclaimer is capitalized, the disclaimer itself is not capitalized.

After claiming that "the Disclaimer satisfies all of the statute's requirements," Defendant argues in a footnote that the court could find the disclaimer conspicuous even if the disclaimer does not meet all of the statutory requirements. Although Defendant claims that "courts have not required strict compliance with Section 41-1-110," the court does not find support in the case cited by Defendant. Dkt. No. 4-1 at 7 n.3. Defendant cites to *Moss v. City of Abbeville,* 740 F. Supp. 2d 738, 754 (D.S.C. 2010), where the court observed that an underlined, bolded disclaimer "appears to meet the statutory requirements." However, the court never decided whether the disclaimer complied with § 41-1-110. *Id.* Rather, the court found that there was no contract created by the handbook because plaintiff never received the handbook.[6] *Id.* at 754-55.

---

[5] The court was presented the acknowledgment page that purports to satisfy part of the statutory requirements of § 41-1-110, which requires the disclaimer to be signed by the employee. The court, however, need not consider this document as the court finds that the disclaimer is not conspicuous as a matter of law because it is not capitalized.

[6] To the extent Defendant relies on *Moss* to suggest a disclaimer that is underlined and bolded, but not capitalized, is a conspicuous disclaimer under § 41-1-110, Defendant's reliance is misplaced. Although the opinion described the disclaimer as underlined and bolded, the court, after reviewing the disclaimer in that case, takes judicial notice that the disclaimer in the employee handbook in *Moss* was underlined, bolded, and capitalized.

The disclaimer contained on the first page of Defendant's employee handbook is not conspicuous under § 41-1-110 because it is not capitalized. The court, therefore, cannot dismiss Plaintiff's breach of contract claim based on Defendant's argument that the disclaimer is conspicuous as a matter of law.

Concluding that the breach of contract claim is not statutorily barred, the court reviews the attendance policy contained in the employee handbook to determine whether it contains promises regarding disciplinary procedures. "To be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler*, 365 S.C. at 109. General policies of non-discrimination and non-retaliation such as those that state "[i]t is important that individuals are treated fairly" and that the employer "supports an open door-policy" are "not sufficient to constitute an actionable promise." *Cartee v. Wilbur Smith Assocs., Inc.*, No. 3:08-4132, 2010 WL 1052091 (D.S.C. Feb. 3, 2010).

The attendance policy, on pages 26-28 of the employee handbook, describes how absences and tardiness will be handled by the employer. Dkt. No. 4-2 at 33-35. The employer explains why the attendance policy is necessary: "An attendance policy is necessary in order to set a uniform and equitable standard for all plant employees." *Id.* at 33. The policy defines "absences" and then sets forth a points system in which every absence or tardiness is assessed between ½ to 2 points. *Id.* The policy outlines the disciplinary action which will be applied to employees after accumulation of points:

> **Discipline:** Total points assessed within a rolling six-month period would result in the following disciplinary action:
>
> 4 points - Written warning
> 6 points - Final warning/counseling session
> 7 points - Termination

> Any employee who within a twelve-month period receives a final
> warning/counseling session and is due to receive a second final
> warning/counseling session may be terminated.
>
> In addition, absence without reporting off for three (3) consecutive
> days, without justifiable reason satisfactory to the company, is a
> major offense and will result in termination. Also, employees leaving
> the plant during their work hours without proper authorization may
> be terminated. (Employees leaving the premises during their lunch
> period must clock out and back in).

*Id.* at 34-35.

The policy also allows for employees to earn credits to offset the points accumulated:

> **Attendance Credits:** In recognition of those who maintain good
> attendance, employees can earn attendance credits. If an employee
> has worked at least 800 hours in a six-month period and has not
> been assessed any points or used any attendance credits during
> that same six-month time frame, he/she may earn one attendance
> credit to apply against absences. An employee may have a maxi-
> mum of two attendance credits at any one time.
>
> If an employee has an attendance credit at the time of an absence,
> instead of being assessed a point (or ½ point) as outlined above,
> an attendance credit (or ½ credit) will be used.

Dkt. No. 4-2 at 34.

The court finds that the attendance policy purports to apply uniformly to all plant employees. The court further finds that the attendance policy contains mandatory and permissive language. For example, the policy defines the number of points that "will be charged" against the employee in the case of an absence of two hours or less (½ point), a reported absence of more than two hours (1 point), and an unreported absence (2 points). The policy states that if four points are assessed within a six-month period, a written warning "would result." Also, if an employee is absent for three consecutive days "without reporting off," this "will result in termination." The above-quoted language is mandatory language. The attendance policy also includes permissive language

8

suggesting that management has discretion in certain situations. For example, an employee who within a twelve-month period has received a final warning/counseling session and is due for another final warning/counseling session "may be terminated." Employees who leave "the plant during their work hours without proper authorization may be terminated." The section on attendance credits also contains both permissive language with respect to the way credits are earned ("may earn one attendance credit") and mandatory language with respect to how the credits are used ("instead of being assessed a point (or ½ point) as outlined above, an attendance credit (or ½ credit) will be used").

After reviewing the attendance policy, the court finds that the mandatory language contained in the attendance policy may contain promises to Defendant's employees regarding attendance, including when termination will result from absences or tardiness. The court cannot dismiss Plaintiff's breach of contract claim at this stage because Plaintiff has alleged facts that may support a breach of contract claim. Specifically, Plaintiff alleges that there was a contractual obligation contained in the "employment handbook" and that Defendant breached its obligation by incorrectly assessing points and failing to provide attendance credits pursuant to the handbook. Dkt. No. 1-1 at 7. Plaintiff alleges that her damages "are the direct and proximate result of Defendant's wrongful termination of Plaintiff in violation of employment handbook policies and procedures." *Id.* Viewing the facts in the light most favorable to Plaintiff, the court denies Defendant's motion to dismiss with respect to Plaintiff's breach of contract claim because Plaintiff has alleged facts to support a breach of contract claim.

**Breach of Contract Accompanied by Fraudulent Act.** Defendant argues that Plaintiff's claim for breach of contract accompanied by fraudulent act should be dismissed because Plaintiff

9

does not allege a fraudulent act separate from the breach of contract. Dkt. No. 4-1 at 7-9. Plaintiff does not respond to Defendant's argument.

"In order to recover for breach of contract accompanied by a fraudulent act, a plaintiff must establish: (1) a breach of contract; (2) that the breach was accomplished with a fraudulent intention, and (3) that the breach was accompanied by a fraudulent act." *Minter v. GOCT, Inc.*, 322 S.C. 525, 529-30, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). "In an action for breach of contract accompanied by a fraudulent act, the fraudulent act element is met by any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." *Perry v. Green*, 313 S.C. 250, 254, 437 S.E.2d 150, 152 (S.C. Ct. App. 1993). Fabricating pretextual reasons for an employee's termination may constitute the fraudulent act that must accompany the breach of contract. *Conner v. City of Forest Acres*, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (S.C. 2002).

In her Complaint, Plaintiff describes the attendance policy and points system, and claims that Defendant's[7] "deliberate misrepresentation assessment of points" under the attendance policy was "dishonest, unfair, and retaliatory." Dkt. No. 1-1 at 7-8. Further, Plaintiff alleges that Defendant "falsely assert[ed] 'points' against Plaintiff for the purposes of firing and replacing Plaintiff after eleven (11) years of service." *Id.* at 8. Viewing the factual allegations in the light most favorable to Plaintiff, the court interprets the Complaint as alleging that Defendant intentionally misrepresented to Plaintiff the number of points accumulated under the attendance policy in order to facilitate a breach of the contract, *i.e.*, Defendant fabricated a pretextual reason to terminate Plaintiff's employment in violation of the employee handbook. The court finds that the fabrication

---

[7] The Complaint actually states "Plaintiffs deliberate misrepresentation . . . ." The court views the use of "Plaintiffs" as a typographical error and believes that Plaintiff intended to use the word "Defendant's."

10

of a pretextual reason to terminate an employee may be considered dishonest in fact and a fraudulent act independent of the alleged breach of contract. *See Conner*, 348 S.C. at 466. The court, therefore, denies Defendant's motion to dismiss Plaintiff's claim for breach of contract accompanied by fraudulent act.

**Breach of Fiduciary Duty.** Defendant argues that Plaintiff's breach of fiduciary duty claim fails because there is no fiduciary relationship in a normal employer-employee relationship. Dkt. No. 4-1 at 9-10. Plaintiff does not respond to Defendant's argument.

"'A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Moore v. Benson*, 390 S.C. 153, 163, 700 S.E.2d 273, 279 (S.C. Ct. App. 2010) (quoting *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (S.C. 1992)). Plaintiff alleges that she "reposed a special confidence in Defendant" and that Defendant "accepted the confidence . . . as evidenced by the eleven (11) years of employment." Plaintiff alleges no facts in support of "a special confidence." Plaintiff makes no argument nor cites to any cases that would elevate the normal employer-employee relationship into a fiduciary relationship.[8] The mere allegation that "Plaintiff reposed a special confidence in Defendant" is insufficient under Rule 12(b)(6) to state a claim for breach of fiduciary duty.

The court, therefore, grants Defendant's motion to dismiss with respect to the breach of fiduciary duty claim.

---

[8] This court is unaware of any cases that support the finding of a fiduciary duty between an employer and employee based on a disciplinary policy or other mandatory policy found in an employee handbook. Plaintiff has not offered any legal theory to support a finding of a fiduciary relationship between Plaintiff and Defendant. *Cf. Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir. 1994) (explaining an employer's fiduciary duty to employees as plan administrator under ERISA).

## CONCLUSION

For the reasons set forth above, the court grants Defendant's motion to dismiss pursuant to Rule 12(b)(6) with respect to the breach of fiduciary duty claim, and denies that motion as to the claims for breach of contract and breach of contract accompanied by fraudulent act.

**IT IS SO ORDERED.**

                                      S/ Cameron McGowan Currie
                                      CAMERON MCGOWAN CURRIE
                                      UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
November 8, 2011